IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| JERMAINE LEWIS, Plaintiff | 1:24-CV-00321-RAL |
| vs. | RICHARD A. LANZILLO<br>Chief United States Magistrate Judge |
| WARDEN MICHAEL HOLMAN, Defendant | OPINION ON DEFENDANT'S MOTION TO DISMISS |
| | ECF NO. 40 |

## I. Introduction

Plaintiff Jermaine Lewis, a pretrial detainee, initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1. In his Third Amended Complaint, the currently operative pleading,[1] Lewis asserts constitutional claims based on excessive force, deliberate indifference to his medical needs, and interference with the prison grievance process. ECF No. 38. He also asserts state law claims based on assault and battery and gross negligence. *Id.* The lone Defendant identified in his pleading is Michael Holman, the Warden of the Erie County Prison. *Id.* Lewis seeks nominal, compensatory, and punitive damages. *Id.* at p. 3.

---

[1] Given Lewis' pro se status and the fact that his Third Amended Complaint, although filed without leave, merely eliminates legal conclusions and simplifies the allegations set forth in his Second Amended Complaint, Holman's request to strike the Third Amended Complaint will be denied. *See* ECF No. 40.

Presently pending is Holman's motion to dismiss. ECF No. 40. Lewis having filed a response, *see* ECF No. 43, this matter is ripe for adjudication.[2]

II. Factual Allegations

The following factual averments are accepted as true for purposes of this motion. On August 31, 2023, Lewis was asleep in his cell in the Erie County Prison. ECF No. 38 ¶¶ 3-4. While Lewis was sleeping, Holman entered his cell and deployed oleoresin capsicum (OC) spray directly onto Lewis. *Id.* ¶ 4. Lewis woke up and pleaded for Holman to stop. *Id.* ¶ 5. Following the incident, Holman and other non-Defendant staff members "failed to provide [him] with adequate decontamination or medical attention for the physical distress caused by the O.C. spray." *Id.* ¶ 6. Lewis's attempts to file a grievance concerning the incident were "obstructed or denied" by Holman and other prison officials. *Id.* ¶ 7.

III. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A.

[2] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Finally, because Plaintiff is proceeding pro se, his complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read his pro se

pleading to state a valid claim upon which relief could be granted, it will do so despite any confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

IV. Analysis

In his pleading, Lewis asserts constitutional claims based on excessive force and deliberate indifference to his serious medical needs. The Complaint also can be read to assert a claim based on alleged interference with the prison grievance process. Finally, Lewis asserts state law claims based on assault and battery and negligence. Each constitutional claim will be addressed in turn.[3]

A. Excessive force

Because Lewis was a pretrial detainee at the time of the incident, his excessive force claim is governed by the Fourteenth Amendment's Due Process Clause. *Kapellusch v. Schnell*, 2024 WL 5319116, at *4 (W.D. Pa. Dec. 5, 2024) (citing *Jacobs v. Cumberland County*, 8 F.4th 187, 193 (3d Cir. 2021)). The Fourteenth Amendment protects a pretrial detainee from "'the use of excessive force that amounts to punishment.'" *Robinson v. Danberg*, 673 Fed. Appx. 205, 209 (3d Cir. 2016) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). "To establish a due process violation, 'a pretrial detainee must show *only* that the force purposely or knowingly

[3] Holman does not address Lewis's state law claims in his motion to dismiss.

used against him was objectively unreasonable.'" *Jacobs*, 8 F.4th at 194 (emphasis in original) (quoting *Kingsley*, 576 U.S. at 396-97). The reasonableness of the application of force is evaluated "from the perspective and with the knowledge of the defendant officer." *Kingsley*, 576 U.S. at 399. Factors to consider include: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Rosser v. Donovan*, 2021 WL 5055837, at *2 (3d Cir. Nov. 1, 2021) (quoting *Kingsley*, 576 U.S. at 397).

Lewis's allegations, while succinct, easily satisfy this standard. A sleeping inmate is not resisting, presents no security problem or threat, and requires no use of force to compel behavior. Numerous decisions have held that the use of OC spray "on a physically contained inmate who was complying with instructions and posing no threat to the officer" is unlawful. *Sledge v. Martin*, 2023 WL 2332464, at *7 (W.D. Pa. Mar 2, 2023) (collecting cases). Moreover, because pretrial detainees, unlike convicted prisoners, "cannot be punished at all, much less 'maliciously and sadistically,'" Lewis's status as a pretrial detainee renders those decisions particularly persuasive. *Kingsley*, 576 U.S. at 400. Finally, Lewis's allegation that Holman failed to provide adequate decontamination or medical attention for the physical distress caused by the OC spray factors indicates a lack of effort to temper

or limit the amount or impact of the application of force.[4] For each of these reasons, Holman's motion to dismiss for failure to state a claim must be denied.[5]

B. Deliberate indifference

Lewis next asserts an independent claim for medical indifference based on Holman's failure to provide adequate decontamination or medical treatment after allegedly spraying Lewis with OC spray. Lewis suggests that the exposure to OC spray caused him to experience unspecified "physical distress." ECF No. 38 ¶¶ 6, 10.

To establish a violation of the constitutional right to adequate medical care, a plaintiff must demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir.

---

[4] Multiple Courts of Appeals have recognized that the failure to decontaminate an inmate after deployment of OC spray can bolster or sustain an excessive force claim if it causes unreasonable, prolonged harm. *Gibson v. Thompson*, 2026 WL 1972701, at *5 (E.D. Pa. July 8, 2026) (collecting cases). District courts within this Circuit have generally reached the same conclusion. *Id.* at *6-7 (denying defendant's motion for summary judgment because, in part, the record demonstrated that defendant "failed to have Plaintiff medically evaluated after the OC spray was deployed"); *Bomar v. Wetzel*, 2020 WL 907641, at *5 (W.D. Pa. Feb. 3, 2020) (acknowledging that "failure to decontaminate ... prisoners exposed to pepper spray can support a claim for a violation of the Eighth Amendment where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain") (internal quotation and quoting source omitted).

[5] In his supporting brief, Holman characterizes the allegation that he personally deployed mace on a sleeping inmate as "facially implausible," stating that he "has never used chemical agents on an inmate" in more than thirty years of service and "has not carried OC spray since 2007." ECF No. 41 at p. 7. At this stage in the proceedings, however, the Court must accept as true all well-pled factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Higgins*, 281 F.3d at 388.

1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

The Court of Appeals for the Third Circuit has recognized that the deliberate delay or denial of medical attention following an excessive force incident may constitute deliberate indifference. *See Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) (evidence that officers failed to provide medical care after use of force supported deliberate-indifference claim). The same reasoning applies "to a deliberate delay of OC contamination where a prison official knows that the prisoner is particularly vulnerable to adverse health effects from continued exposure to the chemical agent." *Major v. Edwards*, 2026 WL 1113481, at *9 (W.D. Pa. Apr. 24, 2026). *See also Pressley v. Miller*, 2022 WL 17414866, at *3 (3d Cir. Dec. 5, 2022) (noting that refusal to decontaminate an inmate after use of OC spray may, in some circumstances, suffice as a serious medical need); *Holloway v. Irwin*, 2025 WL 3166088, at *8 (W.D. Pa. Aug. 14, 2025) (allowing deliberate indifference claim to proceed against corrections officers who refused inmate's request for decontamination and treatment after being exposed to OC spray).

In this case, however, Lewis fails to allege facts to support a constitutional claim based on denial of necessary medical care. First, Lewis does not allege that he suffered from a heightened vulnerability to OC spray or experienced any injury beyond the temporary discomfort of the OC spray. *See Gibson v. Flemming*, 837 Fed. Appx. 860, 862 (3d Cir. 2020) (noting that similar allegations failed to support "injuries beyond the temporary discomfort of the OC spray"). Second, and most

significantly, he complaints of "inadequate" decontamination and medical treatment rather than a complete denial of care. "[T]here is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (quoting *United States ex. rel. Walker v. Fayette Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). Where some "medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Id.* (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)). Lewis's vague reference to unspecified "physical distress" due to "inadequate" decontamination does not support either the "serious medical need" or the "deliberate indifference" element of the claim. *Compare Holloway*, 2025 WL 3166088, at *8 (holding that deliberate indifference to medical needs claim was stated where corrections officers allegedly refused to take plaintiff to medical for any form of contamination and instead placed him in the RHU for 28 days, the first ten of which he was denied a shower).

Furthermore, Lewis's pleading acknowledges that unspecified "staff members" were involved in providing him with the inadequate decontamination and follow-up treatment. To the extent he is referring to inadequate decontamination and treatment by medical staff, this further negates any claim against Holman, a non-medical prison official. Where a prisoner is under the care of medical personnel, a non-medical official cannot be considered to have acted with deliberate indifference to his medical needs unless the facts alleged show that he knew medical personnel

were mistreating or failing to treat his serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). While Lewis's Third Amended Complaint must be liberally construed, it "must still allege facts, taken as true, to suggest the required elements of the claims asserted." *Brown v. First Premier Bank*, No. CIV.A. 12-7697 SDW, 2013 WL 941572, at *2 (D.N.J. Mar. 6, 2013) (citations omitted). Because the factual allegations of the Third Amended Complaint fail to support Lewis's "serious medical need" or Holman's "deliberate indifference" to such a need, the Court will dismiss this aspect of his Eighth Amendment claim.

C. Grievance interference

Although it is not entirely clear, Lewis also appears to assert a constitutional claim alleging that Holman interfered with his attempt to file a prison grievance. It is well-settled, however, that inmates "do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 Fed. Appx. 774, 777 (3d Cir. 2005). As such, "allegations of improprieties in the handling of grievances do not state a cognizable claim under § 1983." *Glenn v. DelBalso*, 599 Fed. Appx. 457, 459 (3d Cir. 2015). While prison officials' alleged mishandling of Plaintiff's grievances "may have excused his obligation to exhaust administrative remedies before filing suit, it [does] not give rise to an independent cause of action against the Defendants." *Scutella v. Erie County Prison*, 2020 WL 5366043, at *4 (W.D. Pa. Sept. 8, 2020). This claim will be dismissed.

D. Qualified immunity

Holman alternatively argues that he is entitled to qualified immunity on each of Lewis's claims. Qualified immunity shields a defendant from suit unless he "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Thomas v. Tice*, 948 F.3d 133, 141 (3d Cir. 2020) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting source omitted).

This Court has previously acknowledged that "a robust consensus of persuasive precedent exist[s] to place [an officer] on notice that deploying OC spray on a physically contained inmate who was complying with instructions and posing no threat to the officer [is] unlawful." *Sledge*, 2023 WL 2332464, at *7 (collecting cases). As such, "[a]ny reasonable officer would have known that the use of [OC spray] under such circumstances was unlawful." *Id.* at *8. Based on the current record, Holman is not entitled to qualified immunity on Lewis's excessive force claim.[6]

V. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Holman's motion to dismiss. Specifically, the Court will grant Holman's motion as to

[6] That said, qualified immunity is a fact-specific inquiry that "should not be conclusively resolved at the motion to dismiss stage." *Sledge*, 2023 WL 2332464, at *8 n. 9 (citing *Redclift v. Schuylkill County*, 2022 WL 3951356, at *11 (M.D. Pa. Aug. 31, 2022)). The Court's decision is without prejudice to Holman's ability to renew his assertion of qualified immunity through a motion for summary judgment at the appropriate time.

Lewis's claims for deliberate indifference to his medical needs and interference in the grievance process and deny his motion as to Lewis's excessive force claim. A separate order will follow.

DATED this 25th day of August, 2026.

BY THE COURT:

RICHARD A. LANZILLO
Chief United States Magistrate Judge